# STEPHEN D. HANS & ASSOCIATES, P.C.
LABOR & EMPLOYMENT COUNSEL FOR OVER 40 YEARS

30-30 Northern Blvd, Suite 401
Long Island City, NY 11101

T: 718.275.6700 • F: 718.275.6704

NILS C. SHILLITO
ASSOCIATE
Tel: 718.275.6700
nshillito@hansassociates.com

August 30, 2021

VIA ECF

Hon. Peggy Kuo
United States Magistrate Judge
United States District Court
Easter District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

  Re: **<u>Karapatakis, et al. v. The Bee Factory, LLC, et ano.</u>**
     **<u>Case No. 20 CV 4573 (PK)</u>**

Dear Judge Kuo:

  We represent the plaintiffs George Karapatakis, Dimitrios Karapatakis, and Aikaterini Sachinidou (collectively, "Plaintiffs"), in the above-referenced action. We submit this joint letter motion on behalf of Plaintiffs and with the consent of defendants The Bee Factory LLC and Athanasios Stagias (collectively, "Defendants") (Plaintiffs and Defendants, collectively, the "Parties") seeking approval of the Parties' negotiated settlement agreement (attached hereto as Exhibit A) ("the Agreement") pursuant to the Second Circuit's decision in <u>Cheeks v. Freeport Pancake House, Inc.</u>, 796 F.3d 199, 206 (2d Cir. 2015) as a fair and reasonable resolution of Plaintiffs' Fair Labor Standards Act ("FLSA") claims.

  Plaintiffs specifically request that this Court retain jurisdiction over the Parties' settlement for the purposes of enforcement, and that any dismissal with prejudice incorporate specific language that the Court retains jurisdiction over the settlement for purposes of enforcement of the Agreement. "To retain ancillary jurisdiction to enforce a settlement agreement, "a district court's order of dismissal must either (1) expressly retain jurisdiction over the settlement agreement, or (2) incorporate the terms of the settlement agreement in the order." <u>Thurston v. FlyFit Holdings, LLC</u>, 2020 US Dist. LEXIS 98523, at *5 (SDNY June 3, 2020). Submitted herewith as Exhibit B is a proposed Order of Voluntary Dismissal with Prejudice which incorporates such proposed language.

## BACKGROUND

  Plaintiffs allege that they were employed at the Defendants' restaurant and bakery for various periods of time from approximately July 2019 until March 2020. Plaintiffs claimed that they were required to work substantial overtime hours on a regular basis for which they were not

properly compensated pursuant to the FLSA, in addition to a variety of state law claims for other alleged wage and hour violations. Plaintiffs calculated their unpaid FLSA overtime wages at $175,785.94, per the damages calculations annexed hereto as Exhibit C.

Defendants disputed the Plaintiffs' allegations in this action, and maintained that the Plaintiffs did not work as many hours as they claimed. Defendants further asserted that Plaintiff George Karapatakis was an exempt employee under the FLSA, and was thus not entitled to overtime premium pay. Lastly, Defendants asserted that they lacked the financial resources to pay a more substantial judgment in this case, and provided substantial financial disclosures, including tax returns and bank statements, in support of such position.

The Parties attended an all-day mediation session before EDNY mediator Barry Peek, Esq. on July 19, 2021, which after extensive back-and-forth negotiations, resulted in the settlement now embodied in the Agreement.

## **SETTLEMENT**

In order to avoid the legal and factual risks of further litigation, the parties have agreed to a settlement of all of the Plaintiffs' claims asserted in the action, including the Plaintiffs' FLSA claims and state law claims, for the sum of $165,000.00, inclusive of attorney's fees and costs. Of the total settlement amount, $55,000.00 is payable to Plaintiffs' counsel as attorneys' fees, while the remaining $110,000.00 is payable directly to Plaintiffs. The settlement is the result of arm's-length negotiation between the Parties, in which both sides were represented by sophisticated counsel with extensive experience in wage-and-hour litigation, under the auspices of an experienced and highly qualified EDNY mediator. The Agreement reflects a fair and reasonable settlement to compensate Plaintiffs for their alleged unpaid FLSA overtime wages and is not the product of overreaching.

In light of the contested factual and legal disputes, and Defendants' compelling evidence of financial hardship, Plaintiffs believe that the settlement is reasonable because of the risk that they may not prevail on all of their claims, the extended period of time before a trial may commence, and the risk of inability to ultimately collect on any judgment in their favor.

There is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." Lliguichuzhca v. Cinema 60, LLC, 948 F.Supp.2d 362, 365 (S.D.N.Y. 2013) (quoting Crabtree v. Volkert, Inc., 2013 WL 593500, at *3 (S.D. Ala. Feb. 14, 2013)). "In considering whether a settlement is fair and reasonable, the principal question is 'whether the agreement reflects a reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" Id. (quoting Le v. SITA Info. Networking Computing USA, Inc., 2008 WL 724155, at *1 (E.D.N.Y. Mar. 13, 2008)). Courts consider factors including "(1) the Plaintiff's range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses'; (3) the seriousness of the litigation risks faced by the

parties; (4) whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel'; and (5) the possibility of fraud or collusion." Wolinsky v Scholastic Inc., 900 F Supp 2d 332, 335 (SDNY 2012) (quoting Medley v. Am. Cancer Soc., No. 10-cv-3214 (BSJ), 2010 WL 3000028, at *1 (S.D.N.Y. July 23, 2010)).

The settlement will enable the parties to avoid anticipated burdens and expenses in establishing respective claims and defenses through further litigation and at trial. This settlement is the result of arm's-length negotiation. Plaintiffs were represented by counsel throughout this lawsuit and made an informed decision to settle the action, without incurring the costs or encumbrance of trial. There is no possibility of fraud or collusion as the Parties settled after extensive negotiations, under the auspices of an experienced mediator through the EDNY mediation program.

Given Defendants' arguments and financial condition, the settlement presents a fair recovery for Plaintiffs. Pursuant to the Agreement, Plaintiffs will receive $110,000.00 after deduction of Plaintiffs' counsel fees from the total settlement amount. This amount represents approximately 63% of Plaintiffs' claimed unpaid overtime wages of $175,785.94 (see Exhibit C). Given the good faith factual and legal disputes between the Parties, and Defendants' financial condition, such a recovery is well within the range of reasonableness warranting approval of the Agreement.

A court may approve a settlement where it "reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" Le v. Sita Information Networking Computing USA, Inc., No. 07 Civ. 0086, 2008 U.S. Dist. LEXIS 46174 at *2 (E.D.N.Y. June 12, 2008) (quoting Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1354 (11th Cir. 1982)); see also Kopera v. Home Depot U.S.A., Inc., No. 09 Civ. 8337, 2011 U.S. Dist. LEXIS 71816, at *2 (S.D.N.Y. June 24, 2011) ("If the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved.").

The Agreement also complies with the requirements set forth in Cheeks and prevailing 2nd Circuit case law that has developed since. Specifically, the Agreement includes only a limited release of Plaintiffs' wage and hour claims, rather than a broad general release. The Agreement also does not contain any confidentiality covenants, and although it does contain a mutual non-disparagement provision, such clause contains a carve-out specifically permitting the Parties to make truthful statements regarding their experiences litigating this case.

The Parties recognize that Courts have held that broad one-sided non-disparagement provisions "can be contrary to public policy because they prevent the spread of information about FLSA actions to other workers (both employees of Defendants and others), who can then use information to vindicate their statutory rights." Gaspar v. Pers. Touch Moving, Inc., No. 13 Civ. 8187 (AJN), 2015 U.S. Dist. LEXIS 162243, *3 (S.D.N.Y. Dec. 3, 2015). However, not every non-disparagement clause in a FLSA settlement is per se objectionable. See Lopez v. Nights of Cabiria LLC, 96 F. Supp. 3d 170, 180 n.65 (S.D.N.Y. 2015).

Here the non-disparagement clause contained in this agreement is permissible for two reasons. First the non-disparagement clause is mutual and binds both Plaintiffs and Defendants. Following Cheeks, Courts have approved settlements containing mutual non-disparagement provisions. See Sadana v. Park Li, Ltd., No. 15-CV-8772, 2015 U.S. Dist. LEXIS 19122, at *2-3 (S.D.N.Y. Feb. 17, 2016) (approving the inclusion of a mutual non-disparagement clause in a FLSA settlement agreement); Caprile v. Harabel, No. 14-CV-6386, 2015 U.S. Dist. LEXIS 127332 at *3 (S.D.N.Y. Sept. 17, 2015) (post-Cheeks decision approving a mutual non-disparagement clause but rejecting the inclusion of a confidentiality provision). Second, in recognition of the public policy interest favoring the disclosure of information relating to this action, the non-disparagement provision contains a "carve-out" clause permitting the Parties to make truthful statements regarding their experience in this litigation. Courts have held that such a "carve-out" provision provides an equitable balance between a plaintiff's rights under the FLSA and defendants' interests in preventing the dissemination of defamatory statements. See Cionca v. Interactive Realty LLC, No. 15-CV-05123 (BCM), 2016 U.S. Dist. LEXIS 77372 at *8 (S.D.N.Y. July 10, 2016) (a clause which bars a plaintiff from making negative statements about a defendant "must include a carve-out for truthful statements about [a plaintiff's] experience in litigating [her] case."); Lopez v. Poko-St. Anns L.P., No. 15-CV-4980 (BCM), 2016 U.S. Dist. LEXIS 46862 at fn. 1 (S.D.N.Y. April 4, 2016) (approving a bilateral non-disparagement clause containing a "carve-out" provision for truthful statements); Panganiban v. Medex Diagnostic & Treatment Ctr. LLC, No. 15-CV-2588 (AMD)(LB), 2016 U.S. Dist. LEXIS 29158 at *6 (E.D.N.Y. Mar. 7, 2016) (approving reciprocal a non-disparagement clause with a "carve-out" for truthful statements about [plaintiff's] experience litigating the FLSA action); Cortes v. New Creators, Inc., No. 15 Civ. 5680, 2016 U.S. Dist. LEXIS 79757, *4 (S.D.N.Y. June 20, 2016) (approving a non-disparagement provision that "includes the requisite 'carve-out' for truthful statements about plaintiffs' experience litigating this case").

In light of the contested factual and legal disputes, Plaintiffs believe that the settlement is reasonable and should be approved.

## **PLAINTIFFS' ATTORNEYS' FEES ARE FAIR AND REASONABLE**

Pursuant to the Agreement, Plaintiffs' counsel will receive $55,000.00 in attorneys' fees, which represents one third (33%) of the total recovery in this settlement. This amount is fair and reasonable and well within the range of fees typically awarded to attorneys in cases in this Circuit. "Courts in this district typically approve fee requests of one-third of the total settlement amount." Williams v Arqenta Inc., 2018 US Dist. LEXIS 212914, at *6 (SDNY Aug. 10, 2018) (citing Thornhill v. CVS Pharmacy, Inc., No. 13 Civ. 5507, 2014 U.S. Dist. LEXIS 37007, 2014 WL 1100135, at *3 (S.D.N.Y. Mar. 14, 2014) (collecting cases)); see also Himrod v Cygnus Med., LLC, 2020 US Dist. LEXIS 502, at *7 (SDNY Jan. 2, 2020) (citing Meza v. 317 Amsterdam Corp., No. 14 Civ. 9007, 2015 U.S. Dist. LEXIS 166890, 2015 WL 9161791, at *2 (S.D.N.Y. Dec. 14, 2015)); See also Antonio Alonso, Plaintiff, v. Le Bilboquet NY, LLC, et al., Defendants., No. 16-CV-8448 (JMF), 2017 WL 445145, at *1 (S.D.N.Y. Feb. 1, 2017) (Granting plaintiff's attorney one-third of the settlement amount wherein "it is consistent with a commonly

approved percentage, there are no opt-in plaintiffs, the case is not a collective action, and the attorney's fee award is based on an agreement between Plaintiff and counsel")(internal citations omitted); See Calle v. Elite Specialty Coatings Plus, Inc., 2014 U.S. Dist. LEXIS 164069 at *9 (E.D.N.Y. Nov. 19, 2014) ("A one-third contingency fee is a commonly accepted fee in this Circuit"); Alvarez v Sterling Portfolio Inv. L.P., 2017 US Dist. LEXIS 206043, at *16 (EDNY Dec. 13, 2017) (one-third attorney fee is typical with no requirement for a lodestar cross check).

Plaintiffs' attorneys' lodestar amount totals $25,440.00. Plaintiffs' attorneys' billing records are annexed hereto as Exhibit D. While it is submitted that a lodestar cross check is not necessary in order to approve the attorneys' fees sought herein, the $55,000.00 attorneys' fee recovery sought herein represents a modest 2.16x times lodestar multiplier, which is reasonable and consistent with what was agreed upon between the Plaintiffs and their counsel in Plaintiffs' legal services retainer agreement.

The amount sought by Plaintiffs' counsel under this settlement is fair and reasonable and well within the range of fees typically awarded in this Circuit. See Pinzon v. Jony Food Corp., No. 18-CV-105(RA), 2018 U.S. Dist. LEXIS 87424 (S.D.N.Y. May 24, 2018) (awarding a third, or 5.23 times the lodestar, in an early settlement and "recognizing the importance of encouraging the swift resolution of cases like this one and avoiding 'creat[ing] a disincentive to early settlement'—particularly where such settlement has provided Plaintiff with a substantial and speedy result." (quoting Hyun v. Ippudo USA Holdings et al., No. 14-CV-8706 (AJN), 2016 U.S. Dist. LEXIS 39115, 2016 WL 1222347, at *3 (S.D.N.Y. Mar. 24, 2016).; Shapiro v. JPMorgan Chase & Co., No. 11-CV-7961 (CM), 2014 U.S. Dist. LEXIS 37872, 2014 WL 1224666, at *24 (S.D.N.Y. Mar. 21, 2014) ("Lodestar multipliers of nearly 5 have been deemed 'common' by courts in this District."); Castaneda v. My Belly's Playlist LLC, No. 15 Civ. 1324 (JCF) (S.D.N.Y. Aug. 17, 2015) (Francis, M.J.) (awarding the plaintiff's attorneys a contingency fee of one-third to account for risks in litigation); see also Calle v. Elite Specialty Coatings Plus, Inc., 2014 U.S. Dist. LEXIS 164069 at *9 (E.D.N.Y. Nov. 19, 2014) ("A one-third contingency fee is a commonly accepted fee in this Circuit.").

The hourly billing rates utilized by Plaintiffs' counsel in calculating the lodestar are within the range paid to attorneys of similar experience and professional focus in the Eastern District of New York. The following attorneys have billed time in connection with the litigation of this case, as set forth in Exhibit D hereto:

i. Stephen D. Hans is the shareholder and President of Stephen D. Hans & Associates, P.C., and has been in practice since 1977. His work is billed at $475.00 per hour. Mr. Hans possesses extensive experience litigating wage and hour cases on behalf of both plaintiffs and defendants during his more than four decades of practicing law. See, e.g., Manley v. Midan Rest. Inc., No. 1:14-cv-1369 (S.D.N.Y. March 27, 2017), Doc. No. 42 at *32, 35-37 (fees of $500 per hour for FLSA litigator with 34 years of experience).

The Honorable Peggy Kuo<br>
August 30, 2021<br>
Page 6

  ii. Nils C. Shillito is a senior associate at Stephen D. Hans & Associates, P.C. and is requesting an hourly rate of $375.00. Mr. Shillito has been a labor and employment practitioner for 14 years. Since being admitted to practice in 2007, Mr. Shillito has represented clients in dozens of wage and hour cases during his career. Mr. Shillito's requested hourly rate compares favorably with rates that courts have approved for associates of comparable experience levels. <u>See</u>, e.g., <u>Comonfort v. Servs. Mangia</u>, 2020 U.S. Dist. LEXIS 178105, *4 (S.D.N.Y. September 28, 2020).

  iii. Paralegal work was billed at a rate of $100.00 per hour, well within a range of rates for paralegal work that courts have routinely approved. <u>See</u>, e.g., <u>Cortes v. New Creators, Inc.,</u> 2016 U.S. Dist. LEXIS 79757, *19-20 (S.D.N.Y. June 20, 2016); <u>see also Guallpa v. NY Pro Signs Inc</u>., 2014 U.S. Dist. LEXIS 77033, *29 (S.D.N.Y. May 27, 2014).

  For the purposes of this settlement, Defendants take no position with respect to Plaintiffs' counsel's request for attorneys' fees. In light of the nature of the issues herein and the extensive negotiations necessary to reach the agreed-upon settlement, and given Plaintiffs' counsel's significant experience representing clients in wage and hour litigation, Plaintiffs' counsel was able to obtain a favorable pre-trial result following the Parties' cooperative exchange of information and extensive negotiations. Accordingly, Plaintiffs' counsel submits that the attorneys' fees component of the settlement is fair and reasonable.

<b><u>CONCLUSION</u></b>

  In full consideration of the issues presented in both <u>Cheeks</u> and <u>Wolinsky</u>, we believe that the Parties' Agreement is fair and reasonable and that the settlement should be approved and the case dismissed with prejudice, with the Court retaining jurisdiction over the settlement for purposes of enforcement of the Agreement.

  We thank the Court for its time and attention to this matter.

Respectfully Submitted,<br><br>
/s/Nils C. Shillito<br><br>
Nils C. Shillito (NS-6755)

cc: Sacco & Fillas, LLP (via ecf)

**Attachments**